[Civ. Nos. 44393, 44495. First Dist., Div. Three. Jan. 25, 1979.]

KENNETH JAY OWEN et al., Petitioners, v.
THE SUPERIOR COURT OF SOLANO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Bonjour, Gough, Stone & Remer, Kerry M. Gough, Jules F. Bonjour, Jr., Gary C. Smith and Penelope M. Cooper for Petitioners.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci, Timothy A. Reardon and Derald E. Granberg, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**HALVONIK, J.**—Petitioners are charged by indictment with conspiracy to commit murder in the first degree. The first degree murder charge also alleges two special circumstances: (1) that petitioners willfully conspired to commit premeditated murder "by means of a destructive device or explosive" (Pen. Code, § 190.2, subd. (b)[1]) and (2) that petitioners willfully conspired to murder a peace officer engaged in the performance of his duties (§ 190.2, subd. (c)(1)).

The significance of the special circumstances allegations is that, if found true, petitioners' punishment would be either death or life imprisonment without possibility of parole. (§ 190.3.) Without special

---

[1]Unless otherwise noted, all references are to the Penal Code.

circumstances the penalty for first degree murder is life imprisonment. (§§ 190, 190.4.)

The indictment does not allege that the conspiracy was successful and, in fact and fortunately, the peace officer was not killed. We issued an alternative writ after petitioners' demurrers to the indictment were overruled by the court below. The question presented is whether the conspiracy statute (§ 182) may be melded with the special circumstance portions of the death penalty statute (§ 190.2) to produce a valid special circumstances indictment when there has been no actual murder.

■ At the outset, we must settle a dispute between the district attorney and the Attorney General. In the court below, the district attorney declared: "It is not contended by the People that the death penalty would apply since no death actually occurred as the result of the conspiracy to commit murder." The Attorney General expresses strong reservations about the district attorney's power to limit the alternatives and urges us to treat the matter as if the death penalty were sought.

We resolve this fraternal quarrel in favor of the Attorney General. The death penalty statute[2] does not parse the question. Anyone vulnerable to a sentence of life without possibility of parole is also vulnerable to a death sentence. The statute's procedural exordium, section 190.1, describes the provisions to come as applicable to "A case in which the death penalty may be imposed . . . ." Section 190.2 says "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the . . . special circumstances has been charged and specially found . . . ." Consistent with that statutory scheme, section 190.3 directs the trier of fact, after hearing the special circumstances allegations, to "determine whether the penalty shall be death or life imprisonment without the possibility of parole." Section 190.4, subdivision (c) refers to "the defendant of a crime for which he may be subjected to the death penalty" and 190.4, subdivision (d) provides "In any case in which the defendant may be subjected to the death penalty . . . ." These latter two sections deal with the interposition of pleas of not guilty by reason of insanity and clearly contemplate that a person who "may be subject to the death penalty" includes only those who may be punished by death or the alternative of life imprisonment without

[2]Our holding is confined to section 190 and the sections immediately succeeding it as they read at the time petitioners were indicted. Other statutes providing for the penalty of death or life imprisonment without possibility of parole are not before us and we express no opinion about them.

possibility of parole. In sum, section 190 provides the sentence of life imprisonment without possibility of parole for those who are subject to the death penalty and for no one else.

■ Turning to the fundamental issue, we conclude that a section 190.2 charge of special circumstances is improper when there has been no death.

There can be no question that section 182 permits a charge of conspiracy to commit first degree murder though the conspiracy has been unsuccessful. Section 182 expressly states that where the conspiracy is one "to commit murder . . . the punishment shall be that prescribed for murder in the first degree." And it is elementary that the prosecution may charge a conspiracy without alleging that the substantive crime has been accomplished. (*People* v. *Van* (1939) 30 Cal.App.2d 663, 667 [87 P.2d 57].)

The issue, however, is not whether petitioners may be charged with a conspiracy to commit first degree murder but whether the charge may be enhanced with allegations of special circumstances. The Attorney General, relying on *People* v. *Kynette* (1940) 15 Cal.2d 731 [104 P.2d 794], insists that such a charge is entirely proper. In *Kynette,* appellants were charged with an unsuccessful conspiracy to commit murder. They were not convicted of that conspiracy but challenged their convictions for attempted murder on the theory that they had been deprived of due process and equal protection because inquiry was made of prospective jurors about their attitude toward the death penalty. The contention was rejected. Although the question was posed obliquely, *Kynette* can fairly be cited for the proposition that section 182 may be employed to charge a conspiracy which could subject the accused to the death penalty even though there has not actually been a killing. *Kynette,* naturally, did not address any of the constitutional issues that such a holding would raise today and, perhaps more to the point for purposes of our analysis, was not concerned with a statute similar to the current death penalty statute. In 1940 all first degree murders were punishable by death or life imprisonment in the discretion of the fact finder. Today, by contrast, first degree murder is punished by life imprisonment except for extraordinary cases in which special circumstances are present. Those special circumstances provide death or the alternative of life imprisonment without possibility of parole only in the event that a death actually occurs. Indeed, the statute goes further and requires, with two exceptions, that "The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or

committed such act or acts causing death . . ." (§ 190.2, subd. (c)). "Physically aided" is defined in section 190.2, subdivision (d): "For the purposes of subdivision (c), the defendant shall be deemed to have physically aided in the act or acts causing death only if it is proved beyond a reasonable doubt that his conduct constitutes an assault or a battery upon the victim or if by word or conduct he orders, initiates, or coerces the actual killing of the victim." To reemphasize the point, the Legislature reiterated the presence and physical aid requirements in section 190.5.

One cannot be present during the commission of an act which causes death if there has been no death. This tautology gave the prosecution some pleading problems because the accused, in order to receive proper notice, is supposed to be charged in language which, at the least, conveys the sense of the statute he or she is alleged to have violated. (See §§ 952, 957; *Sallas* v. *Municipal Court* (1978) 86 Cal.App.3d 737 [150 Cal.Rptr. 543]; *People* v. *Puckett* (1975) 44 Cal.App.3d 607 [118 Cal.Rptr. 884]; *People* v. *Jordan* (1971) 19 Cal.App.3d 362 [97 Cal.Rptr. 570]; *People* v. *Clenney* (1958) 165 Cal.App.2d 241 [331 P.2d 696].) The prosecution solved the problem by ignoring it. The indictment charges a special circumstance of conspiracy to murder "a peace officer who was engaged in the performance of his duties." There is no allegation, as the language of section 190.2, subdivision (c)(1) requires, that the peace officer was intentionally killed or that petitioners were personally present during the commission of the acts causing death and that they physically aided or committed the acts. The impossibility of drafting a complaint compatible with the statute should have indicated to the prosecutor that a special circumstance could not properly be charged.

The same can be said of the other allegation of special circumstance. The indictment charges a conspiracy to commit murder "by means of a destructive device or explosive." Although section 190.2, subdivision (b) is one of the two special circumstances not requiring presence during the commission of the acts causing the victim's death,[3] it does require that the accused be one who has "physically aided or committed such act or acts causing death"—words, again, which do not appear in the indictment because they cannot honestly be alleged.

Manifestly, the Legislature did not intend a charge of special circumstance where no death occurs. ■ Since the Code's conspiracy provi-

---

[3]The reason the Legislature did not require presence where death is by explosive device is self-evident.

sion (§ 182) is a general provision it must yield to the specific provisions of section 190.2. (*People* v. *Buffum* (1953) 40 Cal.2d 709, 722 [256 P.2d 317]; *Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 14 [106 Cal.Rptr. 89].)

 In reaching the conclusion that a conspiracy to commit first degree murder cannot include allegations of special circumstances absent a death, we have been guided by the rule of statutory construction which directs us, when determining legislative intent, to look first to the words themselves for the answer. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Had the Legislature's intent not been so clear, a significant constitutional question would confront us. In *Coker* v. *Georgia* (1976) 433 U.S. 584 [53 L.Ed.2d 982, 97 S.Ct. 2861], the United States Supreme Court invalidated, as cruel and unusual punishment proscribed by the Eighth Amendment, the penalty of death for the crime of rape. In doing so, the court said: "We have the abiding conviction that the death penalty . . . is an excessive penalty for the rapist who, as such, does not take human life." (433 U.S. 598 [53 L.Ed.2d 993].)

Petitioners' demurrers to the indictment's allegations of special circumstances should have been sustained.[4]

Let peremptory writ of mandate issue directing superior court to vacate its orders overruling the demurrers and to enter an order striking the allegations of special circumstances.

White, P. J., and Scott, J., concurred.

---

[4]The Attorney General argues that allegations of special circumstances may not be reached by demurrer, citing *People* v. *Superior Court (Colbert)* (1978) 78 Cal.App.3d 1023 [144 Cal.Rptr. 599]. In *Colbert*, however, the demurrer raised only the question of the constitutionality of the death penalty and the court reasoned that since an allegation of special circumstance need not necessarily result in a death penalty, demurrer would not lie. Here the issue is whether special circumstances may be charged at all, whatever the ultimate penalty, and demurrer is therefore the appropriate procedure. (§ 1004, subd. 1.)